No. 23-12882-B

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

Jay D. Gould,

*Plaintiff-Appellant*,

*v.*

Interface, Inc.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Georgia

## BRIEF OF APPELLEE
## INTERFACE, INC.

Stephen E. Hudson
Thomas M. Clyde
C. Allen Garrett
Lesli N. Gaither
Kilpatrick Townsend
 & Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309
(404) 815-6500
shudson@kilpatricktownsend.com
tclyde@kilpatricktownsend.com
agarrett@kilpatricktownsend.com
lgaither@kilpatricktownsend.com

*Counsel for Defendant-Appellee Interface, Inc.*

11th Cir. No. 23-12882-B
*Jay D. Gould v. Interface, Inc.*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-3, the undersigned counsel of record for Appellee, Interface, Inc., hereby certifies, to the best of its knowledge, information, and belief, the following list of the trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

1.    Alston & Bird, counsel for Appellant;

2.    BlackRock, Inc., owns 10% or more of Interface, Inc.'s stock (NASDAQ: BLK);

3.    Blackwell, Keith, counsel for Appellant;

4.    Bly, Magistrate Judge Christopher C.;

5.    Clyde, Thomas, counsel for Appellee;

6.    Edwards, Whitney Bly, former counsel for Appellant;

7.    Gaither, Lesli, counsel for Appellee;

11th Cir. No. 23-12882-B

*Jay D. Gould v. Interface, Inc.*

8.    Garrett, C. Allen, counsel for Appellee;

9.    Gould, Jay, Appellant;

10.    Greenberg Traurig, LLP, former counsel for Appellant;

11.    Grimberg, Hon. Steven D., United States District Judge, Northern District of Georgia, from whom issued the Order and Judgment on appeal in this instance;

12.    Herbert, Brittany Nash, former counsel for Appellee;

13.    Hudson, Stephen, counsel for Appellee;

14.    Interface, Inc., Appellee (NASDAQ: TILE);

15.    Khan, Fahad Ali, former counsel for Appellant

16.    Kilpatrick Townsend & Stockton LLP, counsel for Appellee;

17.    Long-Daniels, David, former counsel for Appellant;

18.    Lumpkin, Merrie Allyson, former counsel for Appellant;

19.    Marquardt, Christopher C., counsel for Appellant;

20.    Poole II, Robert Howard, former counsel for Appellant;

21.    Shapiro, Leigh R., counsel for Appellant;

22.    Squire Patton Boggs (US) LLP, former counsel for Appellant;

23.    Stephenson Jr., John E., counsel for Appellant; and

24.    Wilson, Natasha, former counsel for Appellant.

## STATEMENT REGARDING ORAL ARGUMENT

After extensive briefing and hearings in the District Court, Defendant-Appellee Interface, Inc., respectfully submits that further oral argument is unnecessary.

Following argument, the District Court granted summary judgment to Interface on all of Plaintiff-Appellant Jay Gould's then-pending claims, including his breach of contract claim. Following further argument, the District Court denied Mr. Gould's Motion for Reconsideration, which solely addressed his breach of contract claim.

Mr. Gould has appealed only the grant of summary judgment on his breach claim. This claim has been before the lower court thrice (in connection with the Magistrate Judge's Report & Recommendation, the District Court's Opinion and Order on summary judgment, and the District Court's Opinion and Order on motion for reconsideration), and Mr. Gould presented oral argument below twice. The District Court correctly ruled that Mr. Gould waived the arguments he now asserts on appeal and, alternatively, that Georgia law warranted summary judgment on Mr. Gould's breach claim. Yet another round of oral argument is unnecessary to assist this Court in resolving this appeal.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ...................................... C-1

STATEMENT REGARDING ORAL ARGUMENT ................................. i

TABLE OF CONTENTS .......................................................... ii

TABLE OF AUTHORITIES ....................................................... v

STATEMENT OF JURISDICTION ........................................... ix

STATEMENT OF THE ISSUES.................................................. 1

STATEMENT OF THE CASE ................................................... 1

I.      Course of Proceedings and Disposition Below ................................ 1

II.     Statement of Facts ......................................................... 5

    A.      Mr. Gould agreed that Interface could terminate
    his employment "in its sole discretion, whether
    with or without Cause, at any time upon written
    notice." ..................................................................... 5

    B.      Mr. Gould was formally reprimanded in 2019. ...................... 9

    C.      After having several drinks on the last night of
    Interface's 2020 sales meeting, Mr. Gould
    convened an impromptu meeting of Interface's
    executives where he repeatedly used profane
    language and then had an encounter with two
    female Interface executives.................................... 12

    D.      Interface investigated a complaint by Ms.
    Millsaps-Morris regarding Mr. Gould's conduct. ................ 16

    E.      Interface terminated Mr. Gould. .......................... 21

F.  The R&R recommended that summary judgment be granted to Interface on Mr. Gould's breach of contract claim. ........................................................23

G.  The District Court adopted the portion of the R&R recommending that summary judgment be granted on Mr. Gould's breach of contract claim. ...............24

H.  After Mr. Gould raised his current breach argument for the first time in a motion for reconsideration, the District Court rejected it as waived and meritless. ...........................................25

III.  Standard of Review ........................................................26

SUMMARY OF THE ARGUMENT ....................................................26

ARGUMENT ........................................................................30

I.  Mr. Gould has abandoned any challenge to the District Court's waiver finding that independently supports the judgment against him. ................................................30

II.  Mr. Gould waived below his argument that Interface lacks discretion to make a good-faith determination of Cause. ........................................................33

III.  Mr. Gould's new argument fails on the merits under settled Georgia law ......................................................38

IV.  Interface was afforded, and appropriately exercised, its absolute and "sole discretion" under the Agreement to terminate Mr. Gould for Cause. ..................................39

A.  The most natural reading of Section 5(c) grants Interface "sole discretion" as to whether Mr. Gould's termination will be "with or without Cause." ..................................................39

B.  Mr. Gould fails to show that other provisions of the Agreement preclude reading Section 5(c) to grant Interface "sole discretion" to terminate him for Cause.................................................................. 42

C.  Georgia law enforces contractual provisions giving one party absolute decision-making discretion. ................................................................. 45

V.  Even if Interface was afforded only qualified discretion under the Agreement, Mr. Gould has not raised a genuine issue of fact as to bad faith................................. 49

VI.  Even assuming the Agreement afforded Interface no discretion in terminating Mr. Gould (which Interface denies), the factual record still supports the grant of summary judgment to Interface. ..................................... 54

CONCLUSION ........................................................................ 58

CERTIFICATE OF COMPLIANCE......................................... 59

CERTIFICATE OF SERVICE.................................................. 60

# TABLE OF AUTHORITIES

**Page**

<u>**Cases**</u>

*Automatic Sprinkler Corp. of America v. Anderson*, 243 Ga. 86, 257 S.E.2d 283 (1979) ........................................................ passim

*Berisha v. Stan, Inc.*, 461 F. Supp. 3d 1257 (S.D. Fla. 2020) ................ 36

*Brazeal v. Newpoint Media Grp., LLC*, 331 Ga. App. 49, 769 S.E.2d 763 (2015) ................................................................... 42

*Brogdon v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322 (N.D. Ga. 2000) ...................................................... 36

*Chen v. Tai*, 232 Ga. App. 595, 502 S.E.2d 531 (1998) .......................... 48

*Cobb Beauty College v. Scamihorn*, 339 Ga. App. 751, 792 S.E.2d 769 (2016) ................................................................... 48

*Cotran v. Rollins Hudig Hall Int'l, Inc.*, 948 P.2d 412 (Cal. 1998) .......................................................................... 53

*DeTemple v. Leica Geosystems, Inc.*, No. 1:09-CV-3272-RWS, 2013 WL 750461 (N.D. Ga. Feb. 27, 2013), *rev'd and remanded on other grounds*, 576 F. App'x 889 (11th Cir. 2014) .............................................................................. 50

*Dukes v. Deaton*, 852 F.3d 1035 (11th Cir. 2017) .................................. 50

*EEOC v. Summer Classics, Inc.*, 471 F. App'x 868 (11th Cir. 2012) ............................................................................... 32

*Faith Enters. Grp., Inc. v. Avis Budget Grp., Inc.*, No. 1:11-CV-3166-TWT, 2012 WL 1409403 (N.D. Ga. Apr. 20, 2012) ............ 47

*Fuentes v. Classica Cruise Operator Ltd.*, 32 F.4th 1311 (11th Cir. 2022) ................................................................... 26

*Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312 (11th Cir. 2004) ............................................................................... 50

*High Bid, LLC v. Everett*, 522 F. App'x 688 (11th Cir. 2013) ................ 38

*Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186 (11th Cir. 2018) ....................................................................... 32

*Jackson v. JHD Dental, LLC*, No. 1:10-cv-00173-JEC, 2011 WL 2441920 (N.D. Ga. June 14, 2011) ...................................... 44, 45

*Key v. Naylor, Inc.*, 268 Ga. App. 419, 602 S.E.2d 192, 196– 197 (2004) ...................................................................... 58

*Knight Indus., Inc. v. Turner Mktg., Inc.*, 157 Ga. App. 177, 276 S.E.2d 860 (1981) ........................................................ 47

*Life Care Ctrs. of Am., Inc. v. Dexter*, 65 P.3d 385 (Wyo. 2003) .............................................................................. 53

*Little v. T-Mobile USA, Inc.*, 691 F.3d 1302 (11th Cir. 2012) ............... 32

*Lombard v. L-3 Commc'ns Corp.*, Nos. 98 Civ 5277(DC), 98 Civ. 9039(DC), 2000 WL 1459824 (S.D.N.Y. Sept. 29, 2000) .............................................................................. 47

*Milks v. Software AG USA, Inc.*, No. 1:10-cv-236-TCB, 2010 WL 11440937 (N.D. Ga. Apr. 13, 2010) ................................. 50

*Neibert v. Comput. Scis. Corp.*, No. 1:12-cv-02277-SCJ, 2014 WL 11462721 (N.D. Ga. Feb. 4, 2014), *aff'd*, 621 F. App'x 585, 591 (11th Cir. 2015) ................................................... 51

*Park 80 Hotels, LLC v. Holiday Hosp. Franchising, LLC*, No. 1:21-CV-04650-ELR, 2023 WL 2445437 (N.D. Ga. Feb. 16, 2023), *reconsideration denied*, 2023 WL 5523617 (N.D. Ga. Aug. 4, 2023) ............................................................... 46

*Planning Techs., Inc. v. Korman*, 290 Ga. App. 715, 660 S.E.2d 39 (2008) ........................................................... 47, 50

*Pugh v. United States*, 831 F. App'x 490 (11th Cir. 2020) ...................... 38

*Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678 (11th Cir. 2014) ................................................................................ 31

*Savannah College of Art & Design v. Nulph*, 265 Ga. 662, 460 S.E.2d 792 (1995) ........................................................... 48

*State Hwy. Dep't v. MacDougald Constr. Co.*, 189 Ga. 490, 6 S.E.2d 570 (1939) .............................................................. 51

*Stone v. Wall*, 135 F.3d 1438 (11th Cir. 1998) ....................................... 36

*Sw. Gas Corp. v. Vargas*, 901 P.2d 693 (Nev. 1995) ............................. 54

*T.P. ex rel. T.P. v. Bryan Cnty. Sch. Dist.*, 792 F.3d 1284 (11th Cir. 2015) ................................................................. 32

*Thompson v. Associated Potato Growers, Inc.*, 610 N.W.2d 53 (N.D. 2000) ............................................................... 53

*Thornton v. FedEx Ground Package Sys., Inc.*, 218 F. App'x. 841 (11th Cir. 2007) ........................................................ 51

*Towson Univ. v. Conte*, 862 A.2d 941 (Md. 2004) .................................. 53

*Uintah Basin Med. Ctr. v. Hardy*, 110 P.3d 168 (Utah 2005) ............... 53

*United States v. Levy,* 416 F.3d 1273 (11th Cir. 2005) ........................... 31

*Waldrop v. Community Health Systems, Inc.*, No. 4:16-CV-0235-HLM, 2017 WL 10399268 (N.D. Ga. Aug. 28, 2017) ................ 49

*Wilchcombe v. TeeVee Toons, Inc.*, 555 F.3d 949 (11th Cir. 2009) ................................................................. 26, 36, 37

## **Statutes**

28 U.S.C. § 1291 ................................................................................ ix

28 U.S.C. § 1331 ................................................................................ ix

28 U.S.C. § 1367 ................................................................ ix

O.C.G.A. § 13-2-3 .............................................................. 39

## **Rules**

Fed. R. Civ. P. 56(a) ......................................................... 26

## STATEMENT OF JURISDICTION

Interface agrees with Mr. Gould that subject-matter and appellate jurisdiction exist in this case. The District Court had subject-matter jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction over Mr. Gould's state law breach of contract under 28 U.S.C. § 1367. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether Mr. Gould has abandoned on appeal any challenge to the District Court's ruling below that Mr. Gould waived the argument that Interface's discretion to terminate him for "Cause" is so limited as to always trigger jury review.

2. Whether the District Court correctly ruled that Mr. Gould waived the argument that Interface's discretion to terminate him for "Cause" is so limited as to always trigger jury review.

3. Whether the District Court correctly granted summary judgment to Interface on Mr. Gould's breach of contract claim.

## STATEMENT OF THE CASE[1]

### I.    Course of Proceedings and Disposition Below

After his termination by Interface, Mr. Gould filed an action in the District Court on February 14, 2020, and an Amended Complaint on March 6, 2020.[2] In his Amended Complaint, Mr. Gould alleged six claims for (1) Title VII retaliation; (2) breach of contract; (3) defamation

---

[1] In accordance with Eleventh Circuit Rule 28-5, all record citations are in the following format: Dkt. [docket number], at [page number or paragraph/section number] or Dkt. [docket number], [deponent] Dep. at page and line numbers.

[2] *See* Dkt. 1; Dkt. 4.

*per se*; (4) defamation *per quod*; (5) negligent investigation; and (6) attorneys' fees.[3] On March 20, 2020, Interface filed a Counterclaim for breach of fiduciary duty.[4]

In February 2021, the District Court adopted a Report and Recommendation recommending that Interface's Motion for Judgment on the Pleadings be granted and that Mr. Gould's claim for negligent investigation be dismissed (Count V).[5] In May 2021, the parties stipulated under Rule 15 to the dismissal of Mr. Gould's claims for defamation *per se* (Count III) and defamation *per quod* (Count IV).[6]

In July 2021, Interface moved for summary judgment on Mr. Gould's remaining claims for Title VII retaliation, breach of contract, and attorneys' fees.[7] In February 2022, the Magistrate Judge issued his Report & Recommendation recommending that summary judgment be

---

[3] Dkt. 4. Mr. Gould repeatedly misstates that he brought a claim for "breach of a duty to act in good faith." *See* Appellant's Br. ("App. Br."), at vii, 23. He brought no such claim.

[4] Dkt. 7.

[5] Dkt. 92.

[6] Dkt. 127.

[7] Dkt. 134.

granted ("R&R").[8] By order dated March 31, 2022, the District Court adopted in large part the R&R, granting summary judgment to Interface on all of Mr. Gould's remaining claims.[9] The District Court then certified the judgment under Rule 54(b).[10]

Mr. Gould appealed, but this Court dismissed that appeal for lack of jurisdiction in December 2022.[11] In January 2023, Mr. Gould belatedly filed a Motion for Reconsideration, which was a near verbatim copy of the substance of the appellate brief Mr. Gould had filed before dismissal of his appeal.[12] After oral argument on the Motion for Reconsideration, the District Court denied the Motion in July 2023.[13]

In the MFR Order, the District Court held that Mr. Gould "waived the argument" that Interface's discretion to terminate him for "Cause" is so limited as to always trigger jury review.[14] The District Court found Mr. Gould failed to raise the issue before the Magistrate Judge's

---

[8] Dkt. 195.

[9] Dkt. 201 ("SJ Order").

[10] Dkts. 209, 211.

[11] Dkt. 222.

[12] Dkt. 223.

[13] Dkt. 252 ("MFR Order").

[14] *Id.* at 5.

issuance of the R&R and failed again to raise the issue before the District Court's *de novo* review of the R&R.[15] In addition to denying the Motion for Reconsideration based on waiver, for "separate . . . independently sufficient" reasons the District Court also found the Motion "fail[ed] on the merits" under settled Georgia law.[16]

Interface filed a motion to dismiss its counterclaim without prejudice,[17] which the Court granted on August 2, 2023.[18] That Order noted that "all claims [were] now resolved" and re-affirmed the Judgment previously entered "in favor of Defendant and against Plaintiff."[19]

On August 31, 2023, Mr. Gould filed his Notice of Appeal.[20]

---

[15] *Id.*

[16] *Id.* at 7.

[17] Dkt. 253.

[18] Dkt. 256.

[19] Dkt. 256.

[20] Dkt. 257.

## II.    Statement of Facts

### A.    Mr. Gould agreed that Interface could terminate his employment "in its sole discretion, whether with or without Cause, at any time upon written notice."

Interface is a publicly-traded company and the world's largest manufacturer of modular carpet.[21] Mr. Gould was hired by Interface in 2015 to be its Chief Operating Officer, and was promoted to President in 2016.[22] After being appointed to the Board of Directors later in 2016, Mr. Gould was promoted to Chief Executive Officer in March 2017.[23] As CEO, he reported to Interface's Board of Directors.[24]

At the time of his promotion to CEO, Mr. Gould entered an Amended and Restated Employment and Change of Control Agreement ("Agreement" or "Agmt.").[25] The Agreement set forth the terms of Mr. Gould's employment, including giving Interface's Board of Directors

---

[21] Dkt. 4 ¶¶ 16-17.

[22] Dkt. 139-1, Gould Dep. 57:5-18, 64:19-22.

[23] Dkt. 4 ¶ 2; Dkt. 139-1, Gould Dep. 66:16-22.

[24] *Id.* at 77:11-22; Dkt. 138-1, 30(b)(6) Foshee Dep. 45:19-23.

[25] Dkt. 4 ¶ 21 & Dkt. 4-1.

"sole discretion" as to the manner of his termination, "whether with or without Cause."[26]

- Section 1 of the Agreement provided, in relevant part, that Mr. Gould, "as President and Chief Executive Officer," shall "perform such duties and functions for the Company as shall be specified from time to time by the Board," and that Mr. Gould "agrees to perform such duties."[27]

- Section 2 stated, in relevant part, that Mr. Gould "shall report to the Company's Board."[28]

- Section 4, titled "Term," provided for a "rolling, two-year period," "[s]ubject to the terms of Section 5 hereof."[29]

- Section 5(c) of the Agreement provided: "Subject to the terms of Section 5(d) below [addressing compensation and benefits provided for a termination without Cause], the Company may terminate [Mr. Gould's] employment hereunder, in its sole

---

[26] Dkt. 4-1 § 5(c).

[27] *Id.* § 1.

[28] *Id.* § 2.

[29] *Id.* § 4.

discretion, whether with or without Cause, at any time upon written notice to the executive."[30]

- Section 5(a)(1) of the Agreement defined "Cause" to include "gross negligence, or willful misconduct with respect to business affairs of the Company" or "refusal or repeated failure to follow the established lawful policies of the Company applicable to persons occupying the same or similar positions."[31]

- Section 6 of the Agreement provided: "If Executive is terminated for Cause prior to the end of the Term of this Agreement, Executive shall be entitled to no payment or compensation whatsoever from Company under this Agreement, other than such salary, reimbursable expenses, and other amounts as may properly be due Executive through Executive's last day of employment."[32]

---

[30] *Id.* § (5)(c).

[31] *Id.* § 5(a)(1).

[32] *Id.* § 6.

- Section 11 of the Agreement provided a procedure by which Mr. Gould could contest any compensation or benefit decisions made by the Board and potentially seek to recover his legal expenses in connection with such a dispute.[33]

The Agreement also referred to, and specifically incorporated, the Executive Bonus Plan (governing Mr. Gould's cash bonus opportunities) and Equity Awards Plan (governing stock awards).[34] Under Section 8 of the Agreement, Mr. Gould would receive an annual incentive bonus and equity awards "subject to the terms and conditions of" the Company's "executive bonus plan" and "equity awards plan(s)" respectively.[35] Interface's Executive Bonus Plan gave the Compensation Committee of the Board of Directors "sole discretion" to administer the plan, including to decide "under what circumstances an Award may be settled, canceled, forfeited or surrendered."[36]

---

[33] *Id.* § 21.

[34] *Id.* §§ 8(b)-(c); *see also* Dkt. 134-11 ¶¶ 2-3; Dkt. 134-12; Dkt. 134-13; Dkt. 138-1, Foshee Dep. 17:25-18:8.

[35] Dkt. 4-1 § 8.

[36] Dkt. 134-12 § 3(a).

Mr. Gould also knew he was "subject to accountability for complying with Interface's policies."[37] Those policies were generally included in Interface's Local Policy Manual, and included the governing policies regarding, among other things, harassment and misuse of alcohol.[38]

### B.    Mr. Gould was formally reprimanded in 2019.

Less than two years after Mr. Gould became CEO, Interface received employee complaints alleging he acted inappropriately at Interface's global sales meeting in Atlanta in January 2019.[39] These complaints included allegations that, after consuming alcohol, Mr. Gould made inappropriate comments and acted improperly towards female employees.[40] Employees also complained that Mr. Gould acted in

---

[37] Dkt. 139-1, Gould. Dep. 104:16-20, 108:7-09:1; *see also id.* at 113:24-25 ("I believe I should comply with the policies of the company.").

[38] *See* Dkt. 134-3; Dkt. 144-1, Minano Dep. 43:4-45:24 (Local Policy Manual "applies to all U.S. employees").

[39] *See* Dkt. 134-4; Dkt. 140-1, Hendrix Dep. 61:15-62:5.

[40] *See* Dkt. 134-4.

an overly aggressive and harassing manner when discussing work-related issues with account executives.[41]

During the investigation of these complaints, additional complaints surfaced relating to allegations of Mr. Gould's sexual harassment and misconduct at an earlier sales meeting in 2017. Two female account executives alleged Mr. Gould impermissibly touched their rear-ends while in a photo booth. These interviewees reported to Interface that while in a photo booth, Mr. Gould was drunk, grabbed their buttocks, and blurted out, "let's get inappropriate."[42]

While not substantiating every allegation, the investigation found that "alcohol consumption appeared to play a role in all or most of these events."[43] After receiving the findings of this investigation, the Board formally reprimanded Mr. Gould in a memorandum dated February 25, 2019 (the "February 2019 Memorandum"), which Mr. Gould signed,

---

[41] *See id.* ("multiple witnesses said that Mr. Gould was overly aggressive with them about work-related issues").

[42] *See id.*; Dkt. 140-1, Hendrix Dep. 69:6-17, 77:21-80:18.

[43] Dkt. 134-4.

acknowledging its contents and receipt.[44] The Board notified Mr. Gould that he would not receive his annual merit increase for 2019, and that he would be required to attend EEO and harassment training.[45]

In the February 2019 Memorandum, the Board affirmed to Mr. Gould that "any incident involving sexual harassment or bullying is inconsistent with [Interface's] values and will not be tolerated" and counseled Mr. Gould "against the abuse of alcohol at [Interface]-sponsored events, when conducting [Interface] business, attending [Interface] events or interacting with employees where alcohol is served."[46] The Board also warned Mr. Gould that any "further infractions . . . will result in discipline up to and including termination for Cause."[47]

---

[44] *See id.*; Dkt. 139-1, Gould Dep. 112:5-8 (Board gave him "result of investigation letter in February of 2019 and asked that [he] not abuse alcohol at company events"); *id.* at 150:23-151:13 (Gould read and signed the February 2019 Memorandum).

[45] Dkt. 134-4.

[46] *Id.*; Dkt. 139-1, Gould Dep. 147:15-149:15 (Gould was "obligated to follow what the Board told [him] to do.").

[47] Dkt. 134-4.

**C.    After having several drinks on the last night of Interface's 2020 sales meeting, Mr. Gould convened an impromptu meeting of Interface's executives where he repeatedly used profane language and then had an encounter with two female Interface executives.**

Interface holds a sales meeting annually for its sales employees and certain managers and executives to get "sales training classes, updates on new products, updates on technology," and to build camaraderie.[48] The sales meeting lasts a few days and culminates in an awards banquet, celebrating the accomplishments of the year prior.[49]

Interface held its annual sales meeting for 2020 at the Terranea Resort in Los Angeles, California, from January 11-14, 2020 (the "2020 Sales Meeting").[50] On the final evening of the 2020 Sales Meeting, Tuesday, January 14, the event culminated in the customary awards dinner.[51]  Mr. Gould called an impromptu meeting with the Regional Sales Directors ("RSDs") after the awards dinner in a hospitality suite for a "little celebration and pep talk." (the "RSD Meeting").[52] His goal

---

[48] Dkt. 143-1, Millsaps-Morris Dep. 44:22-45:5.

[49] *Id.* at 43:3-24.

[50] Dkt. 4 ¶ 40.

[51] Dkt. 139-1, Gould Dep. 160:15-161:5.

[52] *Id.* at 164:16-22.

was to thank them for their work in 2019, but "more importantly [to talk] about 2020."[53] There were roughly 25 attendees at the RSD Meeting, including Mr. Gould's assistant, Lauren Jones, and then-Vice President of Sales, Rhiannon Adams.[54]

While at Terranea for the 2020 Sales Meeting, Mr. Gould drank alcohol "every day."[55] On Tuesday evening, by the time Mr. Gould spoke at the RSD Meeting, he had consumed champagne, wine, and bourbon.[56] Mr. Gould admitted that while he "didn't feel impaired," the RSD Meeting attendees "might have been [of the] opinion," that he was drunk.[57]

During the RSD Meeting, Mr. Gould openly declared that he was "not HR appropriate."[58] Among other things, Mr. Gould: (1) cursed repeatedly; (2) said "fuck" "5 or 6" times; (3) called Ms. Adams a "tough

[53] *Id.* at 166:23-25; *see also id.* at 168:1-15 (talked about 2019 performance and "executing our game plan" for 2020).

[54] *See* Dkt. 134-5; Dkt. 146-1, Serviss Dep. 73:4-9 (memorandum is accurate).

[55] Dkt. 139-1, Gould Dep. 158:22-159:1.

[56] *Id.* at 161:19-162:21, 167:8-17.

[57] *Id.* at 169:1-7; *see also* Dkt. 146-1, Serviss Dep. 99:16-25 ("you could tell [Mr. Gould] was drunk for sure" in the RSD meeting).

[58] Dkt. 134-23 ¶ 6; Dkt. 160, Ex. 1.

bitch"; (4) told the attending RSDs their "wet dreams" "start tonight"; (5) and described Interface's competitors as "limp dicks."[59] Specifically, Mr. Gould told them, among other things:

- "If we can't get our fucking shit together, it's our fault."

- That they were "fucking right, [ ] better than the Mohawk [Flooring] group."

- That he "just wanted to fucking win."

- That they would "go out and run a fucking game plan."

- That if the RSDs did not "have what [they] need," the were to "give [Rhiannon Adams] shit."

- That there was going to be a "new quick ship program that you guys are going to have wet dreams about" and those dreams "start tonight."[60]

Meeting attendees also reported that Mr. Gould was "using the F-word a lot" and that Mr. Gould said the RSDs were "lucky to have [Rhiannon Adams], she's the toughest bitch I've ever met."[61]

---

[59] Dkt. 139-1, Gould Dep. 172:1-75:11; Dkt. 160, at Ex. 1.
[60] Dkt. 160, at Ex. 1.

Mr. Gould also asked Ms. Jones to refill his bourbon in the middle of the meeting.[62] Ms. Jones said Mr. Gould "had never asked me to get him a drink before, but in the middle of his toast, he asked me to, which I thought was inappropriate."[63] Meeting attendees also reported that Mr. Gould "degraded" and "humiliated" employees during the RSD Meeting.[64]

After the RSD Meeting, Mr. Gould walked with Rhiannon Adams and Lauren Jones back down to the lobby area, carrying a glass of bourbon.[65] In the lobby hallway, Mr. Gould, Ms. Adams, and Ms. Jones encountered Alison Millsaps-Morris and Shelby Eanes, two Interface

---

[61] Dkt. 134-6; Dkt. 141-1, Jones Dep. 183:3-19 (memorandum is accurate); Dkt. 135-1, Adams Dep. 50:20-51:7.

[62] Dkt. 139-1, Gould Dep. 169:15-19.

[63] Dkt. 134-6.

[64] *See, e.g.*, Dkt. 134-5 ("He degraded the AVP team . . . . He humiliated Brenten Bail[e]y . . . . Brenten told me yesterday 'I've already told Rhi[anon Adams] I'm looking for another job.' He leads our biggest sales team in the Company."); *see also* Dkt. 139-1, Gould Dep. 176:15-77:18 (Mr. Gould was intentionally "calling Brandon [sic] out" during the RSD meeting); Dkt. 134-6 ("Jones also stated that Gould 'singled out an RSD in the San Francisco office because Jay was mad that he'd heard second hand about an issue, so I felt bad for him, Brenten Bailey.'").

[65] Dkt. 139-1, Gould Dep. 182:7-24.

account executives based in Atlanta.[66] Afterwards, Ms. Jones "had to

escort [Mr. Gould] back to his room."[67] When interviewed shortly

thereafter, Mr. Gould did not remember "running into anyone."[68]

### D. Interface investigated a complaint by Ms. Millsaps-Morris regarding Mr. Gould's conduct.

On the morning of January 15, 2020, Ms. Millsaps-Morris emailed

a complaint to Interface's Human Resources department regarding Mr.

Gould's behavior during the encounter the prior evening.[69] Ms.

Millsaps-Morris stated that in her encounter with Mr. Gould, he was

"very intoxicated" and repeatedly called her a "fucking bitch."[70]

---

[66] Dkt. 136-1, Eanes Dep. 127:8-19; Dkt. 143-1, Millsaps-Morris Dep. 168:19-24.

[67] Dkt. 141-1, Jones Dep. 126:15; *see also* Dkt. 134-6 (Jones "start[ed] walking him back to his room, but he is swaying, so I put my arm in his arm, we walk past a few associates, I don't know who they are, I'm sure they saw him. We walk past my room, and he says 'isn't your room close?' I said I want you to get to your room, he was swaying and holding on to the wall.").

[68] Dkt. 134-7; Dkt. 139-1, Gould Dep. 200:21-02:13 (memorandum is accurate).

[69] Dkt. 134-8.

[70] *Id.*

Interface's Independent Directors engaged Zach Fardon and the law firm of King & Spalding to investigate the complaint.[71] Mr. Fardon is a partner at King & Spalding who routinely conducts internal investigations for companies.[72] Mr. Fardon had previously served as an Assistant U.S. Attorney and as the U.S. Attorney for the Northern District of Illinois.[73] Mr. Fardon was tasked with conducting the "factfinding" investigation, and another King & Spalding partner who specializes in employment law, Michael Johnston, was tasked with opining whether, based on the results of the investigation, Mr. Gould could be subject to termination.[74]

Mr. Fardon investigated Ms. Millsaps-Morris's complaint, as well as other employees' complaints arising from the RSD Meeting. Between January 15 and January 17, King & Spalding interviewed many of the

---

[71] *See* Dkt. 137-1, Fardon Dep. 111:5-16 (Fardon was "asked to conduct an independent and thorough, factual investigation of the allegations in the formal complaint that Alison Millsaps-Morris submitted to the company"); *see also* Dkt. 139-1, Gould Dep. 195:7-13 (testifying he was informed by Director Chris Kennedy of King & Spalding's investigation).

[72] Dkt. 137-1, Fardon Dep. 75:10-23.

[73] *Id.* at 65:11-17.

[74] *Id.* at 113:6-14:15.

percipient witnesses, including Mr. Gould in the presence of his counsel. By the time the investigation concluded, King & Spalding had interviewed 40 witnesses.[75] Mr. Fardon concluded that the "witnesses overwhelmingly corroborated each other" regarding the complaints against Mr. Gould.[76]

In an interview with Ms. Millsaps-Morris, Ms. Millsaps-Morris stated, among other things, that (1) "it was 'clear [Mr. Gould was] highly intoxicated' and that he was 'swaying'"; (2) after they said hello, Mr. Gould was "affectionate, trying to hug" and said "what do I have to do for this fucking team?"; (3) when she told Mr. Gould she did not need a lot of positive affirmation, he stated "'why do you have to be such a fucking bitch?'" while "very directly looking at [her]," such that she "felt the word 'bitch' was said with very direct intent"; (4) he called her a "bitch" three more times; and (5) she felt the situation was "out of

---

[75] *Id.* at 22:7-15, 124:16-25:2, 268:1-14.

[76] *Id.* at 21:16-22:1.

control" and walked away, at which time she "had a physical reaction and started crying."[77]

In her interview with Mr. Fardon, Ms. Eanes made similar and consistent statements."[78] Ms. Eanes also confirmed that after the encounter, she and Ms. Millsaps-Morris "walked away and turned the corner and Allison broke down in tears," noting that several individuals saw Ms. Millsaps-Morris crying.[79]

Ms. Adams was speaking to other employees at the time and so "couldn't hear anything."[80] Ms. Jones heard Mr. Gould say "fucking

---

[77] Dkt. 13-9; Dkt. 143-1, Millsaps-Morris Dep. 328:5-329:13 (memorandum is accurate); *see also* Dkt. 137-1, Fardon Dep. 28:2-9 (Ms. Millsaps-Morris and Ms. Eanes told Mr. Fardon that when they encountered Mr. Gould in the hallway, "Mr. Gould was intoxicated, inebriated, drunk, and [ ] called Miss Millsaps-Morris a bitch and fucking bitch repeatedly . . . .").

[78] Dkt. 134-10; Dkt. 136-1, Eanes Dep. 172:8-173:25 (memorandum is accurate).

[79] Dkt. 134-10; *see also* Dkt. 146-1, Serviss Dep. 103:14-15 (Millsaps-Morris was "really upset and crying"). In his brief, Mr. Gould makes much of a surveillance video (with no audio), which he contends is inconsistent with Mr. Millsaps-Morris' account. The video, however, fully accords with Ms. Millsaps-Morris' testimony and her description of her efforts to "diffuse the situation." Dkt. 143-2, Millsaps-Morris Dep 311:18-23.

[80] Dkt. 135-2, Adams Dep. 218:14-25.

bitch," but did not hear the entire conversation.[81] Mr. Fardon also interviewed Mr. Gould (with counsel present), who told him that he would remember such an encounter but had no recollection of the incident.[82] Ultimately, after interviewing witnesses and reviewing evidence, Mr. Fardon concluded that Ms. Millsaps-Morris "was telling the truth."[83]

On January 17, Mr. Fardon and Mr. Johnston gave their report to the Independent Directors of the Board.[84] Mr. Fardon gave his report about the investigation, including that the evidence "overwhelmingly confirmed" Ms. Millsaps-Morris' complaint. In particular, Mr. Fardon informed the Board that "Miss Millsaps, Miss Eanes and Miss Jones all heard Mr. Gould say 'bitch' and 'fucking bitch' in Miss Millsaps presence." Mr. Fardon explained he and his team also interviewed other

---

[81] Dkt. 141-1, Jones Dep. 117:20-118:2.

[82] *See* Dkt. 134-7.

[83] Dkt. 137-1, Fardon Dep. 27:20-21, 30:3-18. ("Miss Eanes, Miss Jones, Miss Millsaps all heard Mr. Gould utter the terms 'bitch' and 'fucking bitch.' Miss Eanes and Miss Millsaps specifically said that those were aimed very pointedly at Miss Millsaps during that conversation. And then there was an additional witness, Miss Effler, who also heard him call Miss Millsaps a bitch or a fucking bitch.").

[84] *Id.* at 275:21-76:1.

witness to whom Ms. Millsaps and Ms. Eanes spoke immediately after the incident, and their nearly contemporaneous communications "in essence, from an investigative perspective, corroborated Ms. Millsaps' statement."[85]

With regard to the RSD Meeting, Mr. Fardon concluded that the allegations of inappropriate conduct were also substantiated. After speaking to several witnesses, "every single one of them confirmed the set of facts" that Mr. Gould was drunk, used inappropriate language, and said and did inappropriate things.[86]

After Mr. Fardon gave his report on the factual finding of the investigation, Mr. Johnston gave the Independent Directors advice regarding its legal options, including his conclusion that sufficient grounds existed to terminate Mr. Gould for Cause.[87]

### E.    Interface terminated Mr. Gould.

After King & Spalding's report and based thereon, on January 19, 2020, the Board voted unanimously to terminate Mr. Gould's

---

[85] *Id.* at 125:4-27:5.

[86] *Id.* at 125:4-18.

[87] *Id.* at 117:1-121:17; Dkt. 140-1, Hendrix Dep. 155:21-23 (advised Gould could "be terminated for cause").

employment for Cause.[88] Mr. Gould was informed by letter that same day that he was "terminated for Cause based upon [his] repeated abuse of alcohol at Company sponsored events and willful mistreatment of subordinate employees, both in violation of Interface's established lawful policies." The Board also informed Mr. Gould that it had "determined in good faith that the circumstances giving rise to [Mr. Gould's] termination [were] not remediable."[89]

Thereafter, by unanimous written consent and in accordance with the powers granted to it by Interface's Executive Bonus Plan and Omnibus Stock Incentive Plan, the Compensation Committee of the Board determined that Mr. Gould was not entitled to any severance or compensation other than payments he had not previously received, nor was he entitled to any bonus payment or equity award vesting for the fiscal year 2019.[90]

---

[88] Dkt. 140-1, Hendrix Dep. 183:14-84:17; Dkt. 134-11 ¶ 4; Dkt. 134-14; Dkt. 142-1, Kennedy Dep. 166:20-168:12, 205:17-25, 227:8-12; Dkt. 145-1, Palmer Dep. 88:9-89:4.

[89] Dkt. 134-11 ¶ 5; Dkt. 134-15.

[90] *See* Dkt. 134-11¶ 12; Dkt. 134-22.

**F.     The R&R recommended that summary judgment be granted to Interface on Mr. Gould's breach of contract claim.**

In his Complaint, Mr. Gould brought a cause of action for breach of contract based on the "manner of [Interface's] termination and fail[ure] to pay him under the terms of his contract.[91]

The R&R concluded that Interface should be granted summary judgment on Mr. Gould's breach of contract claim for two independent reasons: (1) Interface was provided "sole discretion" under the terms of the Agreement to determine whether Mr. Gould should be terminated for Cause; and (2) even if Interface had only qualified discretion to terminate Mr. Gould for Cause, Mr. Gould failed to present any evidence to create a material issue of fact as to whether the termination decision was made in bad faith, *i.e.*, that it "was made for arbitrary or capricious reasons, was based on an improper pecuniary motive, or was predicated on dishonesty or illegality."[92]

---

[91] Dkt. 4 ¶ 81.

[92] Dkt. 195, at 46-57.

### G.   The District Court adopted the portion of the R&R recommending that summary judgment be granted on Mr. Gould's breach of contract claim.

In the portion of his Objections to the R&R that exceeded the District Court's 25-page limit (and to which Interface expressly objected), Mr. Gould barely challenged the first ground of the R&R and essentially ignored the second. Mr. Gould lodged five short arguments relating to his breach of contract claim, including a conclusory, one-paragraph argument that the Magistrate Judge misinterpreted the "sole discretion" language of the Agreement in a way that rendered the Cause provision "meaningless."[93] While noting it was "well within its right to disregard" Mr. Gould's objections with respect to the breach of contract claim because they were lodged on pages that "far exceed those permitted under the local rules," the District Court "undert[ook] a *de novo* review of the entire R&R" and "adopt[ed] the R&R as the Order of the Court in all remaining respects."[94]

---

[93] Doc. 198, at 32.

[94] Dkt. 252.

**H.    After Mr. Gould raised his current breach argument for the first time in a motion for reconsideration, the District Court rejected it as waived and meritless.**

After this Court dismissed Mr. Gould's first appeal, Mr. Gould filed an untimely motion for reconsideration with respect to the breach of contract claim. In this motion, Mr. Gould argued for the first time that Interface did "not have the authority to decide for itself—unreviewable and conclusively—that cause in fact exists."[95] Instead, Mr. Gould contended, the issue must always be decided by a jury.[96]

 After another lengthy hearing, in the MFR Order, the District Court found that while "matters related to the employment contract were explored at length" during the summary judgment proceedings, Mr. Gould's contention that the cause analysis must be decided by a jury had never been raised and thus had been waived.[97] The District Court alternatively concluded that even if the argument had not been waived, it "fail[ed] on the merits" to demonstrate "clear error."[98]

---

[95] Dkt. 223-1, at 19-20.

[96] *Id*. at 11.

[97] Dkt. 252, at 5-7.

[98] *Id*. at 7.

## III.  Standard of Review

Assuming the waiver ruling properly had been challenged in Appellant's opening brief (which it was not), the District Court's finding that Mr. Gould waived the arguments he now asserts on appeal—by raising them for the first time in a motion for reconsideration—would have been reviewed for an abuse of discretion. *Wilchcombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009).

As to the District Court's underlying award of summary judgment, this Court reviews summary judgment *de novo* and affirms where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Fuentes v. Classica Cruise Operator Ltd.*, 32 F.4th 1311, 1315 (11th Cir. 2022).

## SUMMARY OF THE ARGUMENT

Interface terminated Mr. Gould after King & Spalding investigated employee complaints and provided a report to the Independent Directors of Interface's Board. King & Spalding's report informed the Board that the investigation had overwhelmingly corroborated multiple complaints that Mr. Gould had been drunk,

abusive, and repeatedly called one of its account executives a "fucking bitch" on the final night of the company's annual sales meeting. Less than a year before that report and in the aftermath of similar incidents, the Board had issued a formal memorandum to Mr. Gould warning him that conduct of exactly this type would not be tolerated and would lead to discipline, up to and including his termination "for Cause." Given these undisputed facts, the District Court properly granted summary judgment to Interface on Mr. Gould's breach of contract claim.

Despite initially alleging six claims, Mr. Gould only asks this Court to reverse summary judgment on his breach of contract claim.[99] But as the District Court found (and Mr. Gould does not challenge), Mr. Gould waived below the very argument he now raises on appeal. In any event, his breach of contract claim fails under settled Georgia law.

*First*, Mr. Gould has failed to challenge on appeal a separate, independent ground for the District Court's judgment. In its MFR Order, the District Court found that Mr. Gould "waived the argument" that he raised at the reconsideration stage (and now raises in this

---

[99] Mr. Gould's claim for attorneys' fees relates to, and his dependent on, his breach of contract claim. Dkt. 195, at 57 n.15.

appeal) because he had not raised it in opposition to summary judgment.[100] The District Court's finding of waiver independently supports the District Court's entry of judgment. Because Mr. Gould failed to challenge this alternative ground in his opening appellate brief, he has abandoned the issue, which alone warrants affirmance of the District Court's judgment.

*Second*, even if Mr. Gould had not abandoned any challenge to the District Court's waiver finding, the District Court's waiver should still be affirmed. The District Court's MFR Order correctly determined the breach argument Mr. Gould presented had been raised for the first time on reconsideration. Because Mr. Gould's appellate brief presents the same breach argument the District Court found waived, this Court also should find his current breach argument had been waived below. At the least, the District Court did not abuse its discretion in finding waiver.

*Third*, on the merits, Mr. Gould's new argument asks this Court to rewrite Section 5(c) in such a way as to render Interface's "sole discretion" effectively meaningless. Mr. Gould asks this Court to hold that "sole discretion" applies only to Interface's *right* to terminate Mr.

---

[100] Dkt. 252, at 5-7.

Gould, but not to the immediately following language that such termination can be "with or without Cause." Interface necessarily had the *right* (as his employer) to terminate Mr. Gould under the Agreement; no other person or entity could do so. Mr. Gould's proffered reading of "sole discretion" thus renders it both unnecessary and meaningless. Under Mr. Gould's interpretation, moreover, an employer would never be able satisfy a "Cause" provision in its contract—through a neutral investigation or in any other way—in a manner that would avoid jury review. This is not the law.

The R&R adopted by the District Court alternatively found that that, even if Interface had only qualified discretion to determine whether to terminate Mr. Gould for "Cause," Mr. Gould failed to create a jury issue as to Interface's "good faith" in exercising that qualified discretion. Mr. Gould does not even address this alternative ground in his appellate brief and has therefore, once again, waived any argument related to it.

This Court should affirm the entry of judgment against Mr. Gould.

# ARGUMENT

## I.  Mr. Gould has abandoned any challenge to the District Court's waiver finding that independently supports the judgment against him.

In his notice of appeal, Mr. Gould challenges the entry of final judgment against him.[101] But the District Court only entered final judgment after Mr. Gould moved for reconsideration of the District Court's SJ Order.[102] In its MFR Order, the District Court found that (1) as a procedural matter, Mr. Gould waived the argument that Interface's discretion to terminate him for "Cause" is so limited as to always trigger jury review, by not raising it before summary judgment; and (2) as a substantive matter, Mr. Gould incorrectly contended that this argument merited reconsideration of summary judgment. *See* Dkt. 252, at 5 ("Gould waived the argument he now raises."); *id.* at 7 ([E]ven if the motion had been timely and the argument preserved, it fails on the merits in any event . . . .").

Even if Mr. Gould's substantive contentions had merit (and they do not, as explained in Section III below), the District Court's finding of

---

[101] Dkt. 257.

[102] *Compare* Dkt. 256 (order entering judgment and closing the case, noting "all claims" are "now resolved"), *with* Dkt. 252 (MFR Order).

waiver provides an independent, alternative ground for rejecting Mr. Gould's breach claim and entering judgment against him. In his opening brief, Mr. Gould does not challenge the District Court's finding of waiver. He neither enumerated it as an error nor set forth any substantive argument in support of its reversal. In fact, Mr. Gould did nothing other than note that the District Court denied his Motion for Reconsideration.[103] This is fatal to Mr. Gould's appeal.

This Court has repeatedly emphasized that "[t]o obtain reversal of a district court judgment that is based on multiple, independent grounds, an appellant must convince us that every stated ground for the judgment against him is incorrect." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014). "When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed." *Id.*; *see also United States v. Levy,* 416 F.3d 1273, 1278 (11th Cir. 2005) ("Requiring all parties to raise issues in their initial briefs is not unduly harsh or overly burdensome.").

---

[103] App. Br., at 27.

Because Mr. Gould has not addressed the District Court's finding of waiver in his opening brief, this Court has been provided no argument, record citations, legal authority, or reason to review this basis for the District Court's judgment. *See T.P. ex rel. T.P. v. Bryan Cnty. Sch. Dist.*, 792 F.3d 1284, 1291 (11th Cir. 2015) ("[A]ppellate courts do not sit as self-directed boards of legal inquiry and research[.]") (citation omitted). The abandonment of this issue, moreover, cannot be rectified in Mr. Gould's reply brief.[104] Because Mr. Gould has abandoned any challenge to the District Court's independent waiver finding, the judgment against him should be affirmed.

---

[104] "[A]n appellant must directly challenge each of the district court's grounds in his initial brief; challenges that are merely hinted at or that first appear in a reply brief do not merit consideration." *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1194 (11th Cir. 2018); *see also Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1306 (11th Cir. 2012) ("By failing to challenge in their opening brief the district court's ruling [on a particular ground] . . . the plaintiffs have abandoned any contention that the court erred . . . on that ground."); *EEOC v. Summer Classics, Inc.*, 471 F. App'x 868, 870-71 (11th Cir. 2012) (finding that appellant EEOC waived on appeal an argument it had raised in a motion for reconsideration below because "[t]he EEOC's factual objections, without corresponding legal argument, were insufficient to preserve the argument on appeal").

II.    **Mr. Gould waived below his argument that Interface lacks discretion to make a good-faith determination of Cause.**

In granting Interface summary judgment on Mr. Gould's breach of contract claim, the District Court appropriately determined that, under the Agreement: (1) Interface had the "sole" and absolute discretion to terminate Mr. Gould's employment for Cause; and (2) even if Interface's discretion was qualified, there was no material factual issue as to whether Interface exercised its qualified discretion in good faith.[105] In the MFR Order, the District Court also found Mr. Gould waived the argument that he now raises on appeal, *i.e.*, that Interface's discretion to terminate him for "Cause" is so limited (neither absolute nor qualified) as to always trigger jury review. Because Mr. Gould had not argued before summary judgment that any "Cause" termination must be subject to jury review, the District Court found it waived.[106]

The District Court correctly found waiver. Mr. Gould's arguments in opposition to summary judgment had consistently acknowledged that the Agreement afforded Interface some level of discretion to terminate

---

[105] Dkt. 195, at 46-57.

[106] Dkt. 252, at 5-7.

him for "Cause"—either absolute or qualified by a requirement of "good faith." In fact, Mr. Gould argued that the Magistrate Judge's ruling had improperly found absolute discretion and therefore removed "the duty of the Defendant to act in good faith when making a determination of termination for 'Cause.'"[107]

But as the District Court correctly noted, Mr. Gould did *not* argue in opposition to summary judgment that a third "tier" of contractual discretion existed that automatically required the termination of an employee for "Cause" to always be subject to jury review. As the District Court explained, Mr. Gould's new argument on reconsideration asserted that *Automatic Sprinkler Corp. of America v. Anderson*, 243 Ga. 86, 257 S.E.2d 283 (1979), created "three 'tiers' of contracts": (1) where "whether cause exists is subject to litigation"; (2) "where the company can terminate the employee if it determines in good faith that cause existed"; and (3) where the contract gives "the company the sole, unreviewable, and ultimate authority to both terminate an employee and make the cause determination."[108] While Mr. Gould only argued in

---

[107] Dkt. 198, at 32.

[108] Dkt. 252, at 7.

objection to the R&R that the Agreement's "Cause" provision fell into the second category, the District Court found he "now argues that the contract falls into the first category."[109]

On appeal, Mr. Gould makes the same argument that the District Court already found he waived. He claims that summary judgment would be inappropriate even if Interface determined in good faith that it had cause to terminate Mr. Gould's employment.[110] According to Mr. Gould, "[b]ecause Interface had no discretion under the agreement to determine the existence of cause, this case is one in which the issue, to put it as the Supreme Court did in *Automatic Sprinkler*, is whether the determination of cause 'was in fact erroneous.'"[111]

As discussed below, this argument fails on its merits. But this Court need not reach the issue because, as the District Court found, Mr. Gould failed to timely raise it before the District Court. Reconsideration is not the appropriate vehicle to present "new arguments or evidence that should have been raised earlier." *Brogdon v. Nat'l Healthcare*

---

[109] *Id.*

[110] *E.g.*, App. Br., at 33, 37; Dkt. 223-1.

[111] App. Br., at 36.

*Corp.*, 103 F. Supp. 2d 1322, 1338 (N.D. Ga. 2000). Applying this rule, courts commonly deny reconsideration remised on new arguments previously available to the movant, as the District Court did here. *See Wilchcombe*, 555 F.3d at 957-58 (affirming denial of motion for reconsideration based on arguments that "could and should have been presented to the district court" in summary judgment briefing); *Stone v. Wall*, 135 F.3d 1438, 1442 (11th Cir. 1998) (affirming denial of motion for reconsideration where movant argued for the first time that Virginia rather than Florida law should apply); *Berisha v. Stan, Inc.*, 461 F. Supp. 3d 1257, 1260 (S.D. Fla. 2020) (denying reconsideration where movant merely advanced arguments "that should have been raised earlier").

In *Wilchcombe*, a copyright case involving song authorship, the defendants moved for summary judgment on their affirmative defense that the plaintiff had granted an implied license to use the song. 555 F.3d at 955. The plaintiff opposed the motion, but "only argued that he had never granted anyone a license to use his work." *Id.* The court granted summary judgment and the plaintiff moved for reconsideration, arguing for the first time that he had revoked the implied license and

that factual issues regarding the implied license made summary
judgment improper. The district court denied the motion and this Court
affirmed, noting that the plaintiff's arguments on appeal were
"replicated from his motion for reconsideration," and reasoning that the
plaintiff "gave no reason . . . why he failed to raise [his] new legal theory
before judgment was rendered." *Id.* at 957-58; *see also id.* at 957
(explaining that denial of reconsideration is "especially sound[]" if the
movant "gives no reason for not previously raising an issue" (citation
omitted)).

The same analysis applies here. Mr. Gould's new argument on
reconsideration—now repeated on appeal—addressed the proper
interpretation of the Agreement under long existing authorities and
thus could have been raised before the grant of summary judgment. As
the District Court discussed, Mr. Gould could have made these
arguments (1) in his 36-page Opposition to Interface's Motion for
Summary Judgment in August 2021; (2) during the hearing held by the
Magistrate Judge in October 2021; or (3) in his rule-exceeding 35-page

Objections to the R&R in February 2022.[112] But over these 70+ pages of briefing and a multi-hour hearing, Mr. Gould never raised the arguments he advanced on reconsideration and now on appeal. The District Court appropriately concluded that they were waived, and this Court should do the same. *See generally High Bid, LLC v. Everett*, 522 F. App'x 688, 694 (11th Cir. 2013) ("[T]he district court did not abuse its discretion in refusing to permit [the party] to relitigate, with new argument, the issue on which summary judgment was granted.").

## III.   Mr. Gould's new argument fails on the merits under settled Georgia law.

Georgia law affords employers and other contracting parties either absolute discretion or qualified discretion in exercising decision-making authority granted to them under contractual agreements. As the District Court correctly found, Interface was entitled to summary judgment on Mr. Gould's breach claim under either level of discretion.

---

[112] *See* Dkt. 252, at 6; *see also Pugh v. United States*, 831 F. App'x 490, 490-91 (11th Cir. 2020) (affirming denial of motion for reconsideration where movant's arguments could have been advanced in his objections to the R&R).

**IV.  Interface was afforded, and appropriately exercised, its absolute and "sole discretion" under the Agreement to terminate Mr. Gould for Cause.**

Under Georgia law, courts will enforce the language chosen by the parties to an agreement. *See generally* O.C.G.A. § 13-2-3 ("The cardinal rule of construction is to ascertain the intention of the parties."). Because the District Court properly enforced the language used in the Agreement, its determination that Interface had "sole discretion" to terminate Mr. Gould for Cause should be affirmed.

**A.  The most natural reading of Section 5(c) grants Interface "sole discretion" as to whether Mr. Gould's termination will be "with or without Cause."**

This case involves sophisticated parties and the governing contract for a Chief Executive Officer of a publicly-held corporation. The parties agreed to afford broad discretionary authority to the Interface Board both to define Mr. Gould's responsibilities and to supervise his performance. Section 1 of the Agreement provided, in relevant part, that Mr. Gould, "as President and Chief Executive Officer," shall "perform such duties and functions for the Company as shall be specified from time to time by the Board," and that Mr. Gould "agrees to

perform such duties."[113] Section 2 stated, in relevant part, that Mr. Gould "shall report to the Company's Board."[114] Section 4, titled "Term," provided for a "rolling, two-year period," "[s]ubject to the terms of Section 5 hereof."[115]

In Section 5, titled "Termination," the parties agreed to afford the Board broad discretionary authority with respect to any possible termination of Mr. Gould's employment. Section 5(c) specifically addressed Interface's right to terminate Mr. Gould for Cause: "Subject to the terms of Section 5(d) below [addressing compensation and benefits to be provided in the event of a termination without Cause], the Company may terminate [Mr. Gould's] employment hereunder, ***in its sole discretion***, whether with or without Cause, at any time upon written notice to the executive."[116] The parties could have imposed a limitation or qualification on the right of the Company, "at any time," to terminate Mr. Gould "with or without Cause." They did not.

---

[113] Dkt. 134-2 ¶ 7.

[114] *Id.* ¶ 8.

[115] *Id.* ¶ 9.

[116] *Id.* ¶ 10 (emphasis added).

In his brief, Mr. Gould repeatedly admits that Interface had "sole discretion" as to whether to terminate Mr. Gould.[117] But Mr. Gould then asks this Court to adopt a strained and partial construction of the single sentence comprising Section 5(c). Specifically, without any supporting authority, Mr. Gould argues that "in its sole discretion" relates only to Interface's initial power of termination and has no relationship to the immediately following language in the rest of the sentence, *i.e.*, "whether with or without Cause," or "at any time upon written notice to the executive."[118] Indeed, Mr. Gould ignores the portion of the sentence relating to the timing of termination entirely.

The phrase "whether with or without Cause," however, more naturally should be read as being dependent upon and tied to the immediately preceding phrase, "in its sole discretion." In the same way, the third phrase, "at any time upon written notice," also should be read as dependent upon and tied to "in its sole discretion." It would be non-sensical to read a single sentence in such a way to conclude that the

---

[117] App. Br., at 4 ("to be sure" Interface was authorized to terminate Mr. Gould "in its sole discretion").

[118] App. Br., at 32-33.

decision whether to terminate is a matter of Interface's "sole discretion," but not the determination of "Cause" for, or the timing of, termination. Who else other than Interface (as Mr. Gould's employer) would make the termination decision? Interface's "sole discretion" should be read to relate not only to the decision to terminate, but also to whether it would be for Cause and its timing. *See generally Brazeal v. Newpoint Media Grp., LLC*, 331 Ga. App. 49, 55, 769 S.E.2d 763, 768 (2015) ("[E]ach provision of a contract 'is to be given effect and interpreted so as to harmonize with the others . . . .'" (citation omitted)).

### B.    Mr. Gould fails to show that other provisions of the Agreement preclude reading Section 5(c) to grant Interface "sole discretion" to terminate him for Cause.

In an effort to avoid the most natural reading of Section 5(c), Mr. Gould contends that reading Section 5(c) to afford Interface "sole discretion" in determining Cause would be incompatible with other provisions of the Agreement. This argument again misses the mark.

Mr. Gould first contends that the fact that Section 5(d), relating to certain benefits provided Mr. Gould in the event of termination *without cause*, does not refer to a "determination of finding of cause by Interface" and thus somehow negates the "sole discretion" language of

Section 5(c).[119] Section 5(d), however, is specifically referenced in Section 5(c); the fact that this cross-references is not replicated in Section 5(d) does not transform the normal reading of Section 5(c).

Mr. Gould then contends that the fact the Agreement defines "Cause" somehow removes it from Interface's "sole discretion," reasoning there would be no reason to define "Cause" otherwise.[120] But providing a definition of "Cause" in Section 5(a) fully accords with the remainder of the Agreement. Under Section 1 of the Agreement, the Board would establish the "duties and functions" of Mr. Gould, who would report directly to the Board as CEO.[121] As part of these "duties and functions," the Board defined the grounds under which it would terminate Mr. Gould for Cause. Stating the grounds on which the Board would exercise its discretion to terminate Mr. Gould for Cause does not eliminate that sole discretion.

In its "sole discretion," the Board was to interpret and apply the meaning of the definition of "Cause" in (1) terminating Gould's

---

[119] App. Br., at 36-37.

[120] *Id.* at 37-39.

[121] Dkt. 4-1, § 1.

employment under Section 5; (2) ruling on any compensation dispute about pay that Mr. Gould submitted to the Board under Section 11 of the Agreement (which Mr. Gould elected not to do); or (3) addressing any subsequent appeal of that compensation dispute ruling by Mr. Gould under Section 11 (which Mr. Gould could not pursue because he did not present any compensation dispute to the Board in the first place).[122] The fact that the Agreement contains a detailed definition of Cause does not create any tension with the Board having "sole discretion" to decide whether or not "Cause" exists, either in an initial termination decision or in connection with any subsequent compensation dispute Mr. Gould submitted to the Board.

Mr. Gould relies on *Jackson v. JHD Dental, LLC*, No. 1:10-cv-00173-JEC, 2011 WL 2441920 (N.D. Ga. June 14, 2011), for his contention that the fact that the Agreement defines Cause creates a jury issue as to its existence and negates Interface's "sole discretion." App. Br., at 37. The agreement in *Jackson*, however, did not provide "sole discretion" to the employer to terminate the employee. *See* 2011 WL 2441920, at *2–3. Instead, it enumerated eight different grounds for

---

[122] Dkt. 4-1 § 11.

establishing "cause" and incorporated a provision requiring the employee to be paid various benefits for a termination "without cause." *Id.* Because the defendants had not demonstrated the absence of a genuine factual dispute as to whether these grounds had been satisfied, the *Jackson* court denied summary judgment. *Id.* at *8–9. Here, unlike the employment agreement in *Jackson*, the parties' Agreement expressly grants Interface "sole discretion" to terminate Mr. Gould "whether with or without Cause."

### C. Georgia law enforces contractual provisions giving one party absolute decision-making discretion.

As the District Court correctly found in adopting the R&R, Georgia law supports enforcing the parties' Agreement to grant "sole discretion" to the Board regarding Mr. Gould's termination and recognizes that such an explicit allocation of discretion provides absolute and unqualified discretion to a decision-maker. In *Automatic Sprinkler Corp. of America v. Anderson*, the Georgia Supreme Court held summary judgment should have been granted on a terminated employee's claim for incentive compensation, where the contract made any incentive award "entirely within the discretion of the corporation." 243 Ga. at 867, 257 S.E.2d at 284 (citation omitted). The Court ruled "it

is possible to so draw a contract [so] as to leave decisions absolutely to the uncontrolled discretion of one of the parties and in such a case [any factual] issue of good faith is irrelevant." *Id.* at 868, 257 S.E.2d at 284 (citation omitted). That is what the Agreement does here.[123]

Later decisions have confirmed that contracts may grant to one party absolute or unqualified discretionary decision-making authority to which no good faith limitation applies. *See generally Park 80 Hotels, LLC v. Holiday Hosp. Franchising, LLC*, No. 1:21-CV-04650-ELR, 2023 WL 2445437, *7 (N.D. Ga. Feb. 16, 2023) ("After agreeing to these terms, Plaintiffs cannot now base a breach of contract claim on Defendants' exercise of their 'sole judgment' to make changes to the System and Standards by claiming that those changes were made in 'bad faith.'" (citation omitted)), *reconsideration denied*, 2023 WL 5523617 (N.D. Ga. Aug. 4, 2023). The Georgia Court of Appeals has repeatedly explained that "'[i]f an agreement by its express terms grants a party absolute or uncontrolled discretion in making a decision,

---

[123] In his Brief, Mr. Gould endeavors to distinguish *American Sprinkler* by asking this Court to refuse to apply "sole discretion" to the entire provision. App. Br., at 34 (admitting that *American Sprinker* governs Interface's decision whether "to terminate"). No language in *American Sprinkler* compels this result.

then no duty of good faith is implied as to that decision,' and there can be no breach of the agreement predicated on the decision." *Planning Techs., Inc. v. Korman*, 290 Ga. App. 715, 718, 660 S.E.2d 39, 42 (2008) (citation omitted); *Knight Indus., Inc. v. Turner Mktg., Inc.*, 157 Ga. App. 177, 178, 276 S.E.2d 860, 862 (1981) (rejecting breach claim where contract gave party "absolute discretion" as to challenged conduct) (citing *Automatic Sprinkler*, 243 Ga. at 868, 257 S.E.2d at 284).

Based on this authority, district courts have repeatedly granted judgment as a matter of law in breach of contract cases involving the exercise of unqualified discretion by one party. *See Faith Enters. Grp., Inc. v. Avis Budget Grp.*, *Inc.*, No. 1:11-CV-3166-TWT, 2012 WL 1409403, at *7 (N.D. Ga. Apr. 20, 2012) (dismissing an implied duty of good faith and fair dealing claim where a contractual term giving "sole discretion" to the defendant as to the challenged decision meant the contract "does not imply a duty of good faith and fair dealing"); *Lombard v. L-3 Commc'ns Corp.,* Nos. 98 Civ. 5277(DC), 98 Civ. 9039(DC), 2000 WL 1459824, at *5 (S.D.N.Y. Sept. 29, 2000) (explaining "good faith" "irrelevant" where incentive award within "employer's

absolute discretion" (citing *Automatic Sprinkler*, 243 Ga. at 868, 257 S.E.2d at 284)).

Mr. Gould cites several decisions for the proposition that Georgia juries "routinely are charged with deciding whether cause existed to terminate employment under an employment agreement." App. Br., at 41. But none of those authorities involved a contractual provision such as Section 5(c) here, which granted Interface "sole discretion" to terminate Mr. Gould "whether with or without Cause." *See, e.g., Savannah College of Art & Design v. Nulph*, 265 Ga. 662, 663, 460 S.E.2d 792, 793-94 (1995) (reversing grant of summary judgment to employee and remanding for jury determination as to whether enumerated grounds for termination justified termination); *Cobb Beauty College v. Scamihorn*, 339 Ga. App. 751, 756, 792 S.E.2d 769, 773 (2016) (reversing grant of summary judgment to employee and remanding for jury determination as to whether enumerated grounds for termination justified termination); *Chen v. Tai*, 232 Ga. App. 595, 596-97, 502 S.E.2d 531, 533 (1998) (affirming denial of summary judgment where owners provided inconsistent reasons for terminating contractor and contractor continued to work following date of purported

termination); *Waldrop v. Community Health Systems, Inc.*, No. 4:16-CV-0235-HLM, 2017 WL 10399268, at *3, 19-20 (N.D. Ga. Aug. 28, 2017) (denying cross-motions for summary judgment where employment agreement enumerated specific grounds to terminate for "Cause" and record demonstrated genuine disputes of material fact).

Thus, even if Mr. Gould had not waived his current argument challenging Interface's "sole discretion" to terminate him for Cause, that argument lacks merit and should be rejected.

## V.    Even if Interface was afforded only qualified discretion under the Agreement, Mr. Gould has not raised a genuine issue of fact as to bad faith.

As the District Court properly recognized, Georgia law recognizes only two types of contractual discretion: (1) absolute discretion where expressly granted to the decision-maker; and (2) discretion qualified by the duty of good faith. Even assuming the "sole discretion" language in Section 5(c) did not grant Interface absolute discretion (as Interface contends above that it did), summary judgment still would be proper

because Mr. Gould failed to identify evidence creating a genuine issue of material fact as to Interface's good faith in terminating him.[124]

In cases involving qualified discretion, the plaintiff should come forward with evidence that his termination decision "was made for arbitrary or capricious reasons, was based on an improper pecuniary motive, or was predicated on dishonesty or illegality." *Korman*, 290 Ga. App. at 720, 660 S.E.2d at 43-44 (citations omitted). *See also Milks v. Software AG USA, Inc.*, No. 1:10-cv-236-TCB, 2010 WL 11440937, at *7 (N.D. Ga. Apr. 13, 2010) (explaining bad faith requires more than showing "erroneous or unreasonable" decision; instead, decision must be "fraudulent in fact, or so palpably erroneous or unreasonable as to be self-impeaching, in view of the terms of the contract and the

---

[124] Mr. Gould has never alleged a claim for breach of the implied duty of good faith and fair dealing and thus may not assert that claim now. In his brief, Mr. Gould now contends his claim for negligent investigation (which was dismissed by the District Court) was a claim for "breach of a duty to act in good faith." App. Br., at vii, 23. This is not correct, and Mr. Gould may not now add an implied duty claim. *See, e.g., Dukes v. Deaton*, 852 F.3d 1035, 1046 (11th Cir. 2017) (following *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)); *DeTemple v. Leica Geosystems, Inc.*, No. 1:09-CV-3272-RWS, 2013 WL 750461, at *5 (N.D. Ga. Feb. 27, 2013) (refusing to consider unpled claim for breach of the implied covenant first presented in opposition to summary judgment), *rev'd and remanded on other grounds*, 576 F. App'x 889 (11th Cir. 2014).

circumstances" (quoting *State Hwy. Dep't v. MacDougald Constr. Co.*, 189 Ga. 490, 502, 6 S.E.2d 570, 577 (1939))). Where the plaintiff does not present evidence showing a genuine dispute of material fact as to bad faith, summary judgment should be granted. *Neibert v. Comput. Scis. Corp.*, No. 1:12-cv-02277-SCJ, 2014 WL 11462721, at *5 (N.D. Ga. Feb. 4, 2014), *aff'd*, 621 F. App'x 585, 591 (11th Cir. 2015).

While addressed below, Mr. Gould has not raised any argument regarding Interface's good faith in his appeal. This alone requires affirmance. *See Thornton v. FedEx Ground Package Sys., Inc.*, 218 F. App'x. 841, 842 (11th Cir. 2007) ("Because the remaining issues discussed in the district court's memorandum opinion were not raised in [the] appellate brief, they are deemed waived.").

Mr. Gould's failure to address bad faith is not surprising. The record below shows that Interface made the determination to terminate Mr. Gould for Cause in reliance on an investigation and report by King & Spalding. Interface's Independent Directors engaged King & Spalding on January 15, 2020, to investigate complaints against Mr. Gould relating to the hallway encounter and the RSD meeting the night before. After gathering relevant records and conducting in-person and

telephone interviews of "percipient witnesses," King & Spalding informed Interface's Board that its investigation "overwhelmingly corroborated" the complaints made against Mr. Gould regarding his conduct at the RSD Meeting and lobby encounter. King & Spalding further advised the Board the evidence supported Mr. Gould's termination with Cause under the terms of the Agreement.

In the R&R, as adopted by the District Court, the Court correctly held that nothing in the record demonstrated that the investigation, or Interface's reliance thereon, was "arbitrary or capricious, that it was based on improper pecuniary motive, that it was predicted on dishonesty or illegality, or that there was a total absence of any factual evidence to support it."[125] This determination accords not only with the Georgia authorities cited above, but also with numerous decisions from other jurisdictions specifically addressing an employer's qualified discretion to terminate an employee. Those decisions hold that, where an employer investigated the employee's allegedly improper conduct, liability for breach of a qualified discretion provision does not hinge on whether the employee in fact engaged in the conduct, but rather

---

[125] Dkt. 195, at 54.

whether the employer, "acting in good faith and following an investigation that was appropriate under the circumstances, had reasonable grounds for believing" the employee engaged in the conduct. *Cotran v. Rollins Hudig Hall Int'l, Inc.*, 948 P.2d 412, 423 (Cal. 1998) (following similar rulings by Oregon, Nevada, Washington, New Mexico, and Alaska Supreme Courts); *see also Uintah Basin Med. Ctr. v. Hardy*, 110 P.3d 168, 175 (Utah 2005) (noting outlier cases before joining the "far greater number of states" adopting a "more balanced approach that requires an employer to justify termination with an objective good faith reason supported by facts reasonably believed to be true by the employer"); *Towson Univ. v. Conte*, 862 A.2d 941, 950-54 (Md. 2004) (following *Cotran* and holding "the fact-finding prerogative remains with the employer, absent some express intention otherwise"); *Life Care Ctrs. of Am., Inc. v. Dexter*, 65 P.3d 385, 392-93 (Wyo. 2003) (noting *Cotran* standard has been "applied by the majority of other jurisdictions that have addressed the issue"); *Thompson v. Associated Potato Growers, Inc.*, 610 N.W.2d 53, 57-60 (N.D. 2000) (following *Cotran* and explaining that, in light of employer's fiduciary obligations to shareholders, "[a]llowing a trier of fact to second guess an employer's

decision under these, or similar, circumstances could impose significant conflicts on employers"). As explained by one court, this "objective reasonable[ness]" standard protects employers presented with allegations of sexual harassment from the "extremely difficult, Catch-22 predicament" of (a) facing jury reexamination of the grounds for a termination decision even though (b) a failure to terminate promptly could give rise to a Title VII claim by the victim of the harassment. *Sw. Gas Corp. v. Vargas*, 901 P.2d 693, 701, 702 n.5 (Nev. 1995).

These decisions make logical sense. Employers should be encouraged to properly investigate complaints and to be able to rely on those investigations. Even if Mr. Gould had not waived any challenge to this alternative ground for the District Court's grant of summary judgment to Interface, well established authority warrants affirmance of this independent basis for rejecting Mr. Gould's breach claim.

## VI. Even assuming the Agreement afforded Interface no discretion in terminating Mr. Gould (which Interface denies), the factual record still supports the grant of summary judgment to Interface.

As the R&R effectively found, the underlying record allows for an independent determination of Cause, regardless of the King & Spalding

investigation.[126] Section 5(a)(1) of the Agreement defines "Cause" to include Mr. Gould's "gross negligence, or willful misconduct with respect to business affairs of the Company" and his "refusal or repeated failure to follow the established lawful policies of the Company applicable to persons occupying the same or similar positions."[127] Nothing in Mr. Gould's brief negates the undisputed facts discussed above which establish:

- After receiving complaints about his alcohol use and conduct at the 2019 sales meeting, Interface issued, and Mr. Gould signed, a warning memorandum in February 2019. The February 2019 Memorandum informed Mr. Gould that "any incident which involves sexual harassment or bullying" would not be tolerated by the Board and that "any allegation of alcohol abuse" at Interface events would, if substantiated, "result in discipline up to and including termination for Cause."

---

[126] Dkt. 195, at 49-51 (finding the Cause provisions to be "clear and unambiguous" and there to be no material fact issue relating thereto).

[127] Dkt. 134-2 ¶ 11.

- Less than one year later, on January 14, 2020, Mr. Gould gathered a group of regional sales directors for the RSD Meeting. After having drunk champagne, wine, and bourbon that evening, and while holding a glass of bourbon—which he asked his assistant to refill as he was speaking—Mr. Gould held what he described as a "locker room" speech in which he admittedly used sexually charged terminology, including "limp dick," "wet dream," "tough bitch," and (repeatedly) "fuck." By his own admission, Mr. Gould also used the opportunity to "call out" an individual sales employee present in the room. As his remarks came to an end, Mr. Gould proudly boasted, "I am not [an] HR appropriate" CEO. Interface received numerous complaints about Mr. Gould's conduct at the RSD Meeting, describing him as inebriated, inappropriate, and abusive. Mr. Gould admitted that attendees at the RSD Meeting may have been of the opinion he was drunk.

- Following the RSD Meeting, as Mr. Gould walked through the lobby hallway of the conference hotel while carrying a drink, he encountered two female members of Interface's sales team.

Both women involved in the lobby encounter and two other women nearby confirmed Mr. Gould called one of the female staff members a "fucking bitch." Mr. Gould now denies doing so (despite claiming to have no recollection of the incident in an interview shortly afterward), and purports to have a supporting witness in Ms. Adams (but whose actual testimony was that she could not hear the conversation), but he cannot dispute that Interface received a formal written complaint from the targeted female team member the following morning, characterizing the encounter as a "harassment in workplace incident." Interface also received additional complaints from other sales staff aware of the incident.

Given that Mr. Gould had previously been issued a formal written warning about his abuse of alcohol and harassing behavior, his admission to making a profane and inappropriate speech filled with sexual terminology in which he bragged about not being an "HR appropriate" CEO after drinking champagne, wine, and bourbon that evening, there exists no reasonable dispute as to his relevant actions. Where the undisputed record evidence demonstrates sufficient grounds

to terminate an employee for "cause," Georgia courts will affirm the grant of summary judgment to the employer. *See, e.g., Key v. Naylor, Inc.*, 268 Ga. App. 419, 425, 602 S.E.2d 192, 196–197 (2004).

## CONCLUSION

For the foregoing reasons, the Court should affirm the District Court's entry of judgment against Mr. Gould.

Respectfully submitted this 29th day of November, 2023.

**KILPATRICK TOWNSEND & STOCKTON LLP**
1100 Peachtree St., Suite 2800
Atlanta, Georgia 30309-4530
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

*/s/ Stephen E. Hudson*
Stephen E. Hudson (Ga. Bar 374692)
shudson@kilpatricktownsend.com
Thomas Clyde (Ga. Bar 170955)
tclyde@kilpatricktownsend.com
C. Allen Garrett (Ga. Bar 286335)
agarrett@kilpatricktownsend.com
Lesli N. Gaither (Ga. Bar 621501)
lgaither@kilpatricktownsend.com

*Counsel for Defendant-Appellee Interface, Inc.*

## CERTIFICATE OF COMPLIANCE

In accordance with Fed. R. App. P. 32(a)(7), I hereby certify that, excluding the materials authorized to be excluded from the word count by 11th Cir. R. 32-4, this brief contains 10,559 words. I have relied on a word-processing system for the word count.

In accordance with Fed. R. App. P. 32(a)(5)–(6), I further certify that this brief has been prepared in a proportionally spaced typeface utilizing 14-point Century Schoolbook font.

DATED:    November 29, 2023.

*/s/ Stephen E. Hudson*
Stephen E. Hudson
KILPATRICK TOWNSEND
 & STOCKTON LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500
shudson@kilpatricktownsend.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2023, I electronically filed

**BRIEF OF APPELLEE INTERFACE, INC.** with the Clerk of Court

using the CM/ECF System. Counsel for all parties are registered

CM/ECF users and will be served with the foregoing document by the

Court's CM/ECF System.

*/s/ Stephen E. Hudson*
Stephen E. Hudson
KILPATRICK TOWNSEND
 & STOCKTON LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500
shudson@kilpatricktownsend.com